UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JAMES BAKER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 2:22-cv-00166-JRS-MJD |
| | ) |
| FRANK VANIHEL Warden, | ) |
| | ) |
| Respondent. | ) |

**Order Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of James Baker for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. WVD 21-11-0019. For the reasons explained in this Order, Mr. Baker's habeas petition must be **denied.**

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On November 2, 2021, Officer T. Davis wrote a Report of Conduct ("Conduct Report") charging Mr. Baker with Conspiracy/Attempting/Aiding or Abetting to commit a Class A offense and Trafficking under Code Numbers A-111 and A-113. The Conduct Report states:

> On 10/12/2021, civilian Amy Unger was found to have placed two packages of THC gummies, between two bushes at the Jasonville Water Department, located in Jasonville, Indiana. There were recorded phone calls between Ms. Unger and offender Baker, James #966664 to suggest [that] he was involved in the trafficking. See attached Report of Investigation.

Dkt. 16-1.

The Report of Investigation ("Investigation Report") specified,

> On 10/12/2021, a phone call was monitored between offender Baker, James #966664 and civilian Amy Unger (317-696- . . . .). The phone call alluded to Ms. Unger leaving her town of residence, in Fishers, Indiana and traveling to Jasonville, Indiana. Other phone calls were monitored and intelligence suggested [that] Ms. Unger could have possibly been in possession of "gummies" headed to Jasonville for the purpose of dropping them off for a labor line work crew to pick up the following day. On a recorded call from 10/11/2021 at 4:41 PM, Ms. Unger said, "gummies are $35 for 15." Also on 10/11/2021, at 7:49 PM, a recorded call between Ms. Unger and Baker spoke about the Water Department. I checked the work schedule and there was a labor crew scheduled to work at the Jasonville Water Department the following day 10/13/2021. Surveillance was set up involving Correctional Police Officers as well as the Jasonville PD and Clay County Sheriffs Department. Ms. Unger was pulled over for a traffic violation on Highway 48, just outside of Clay City, by a Clay County Sheriff Deputy. During the traffic stop, I was able to question Ms. Unger about trafficking contraband for offender Baker. While under Miranda, Ms. Unger admitted offender Baker had "talked" her into bringing THC gummies to Jasonville Water Department and placing them between two bushes. The gummies were recovered and Ms. Unger identified them as the one's she had purchased in Fishers, on Allisonville Rd. She also admitted to doing this another time, but in Farmersburg, in [] a park. This investigation concluded on 11/02/2021.

Dkt. 16-2.

Mr. Baker was initially found guilty of this charge on November 22, 2021. Mr. Baker appealed and on January 6, 2022, the Warden ordered a rehearing. Dkt. 16-15. It is this rehearing that is the subject of the pending habeas petition. Dkt. 16-16 at p. 2.

Mr. Baker was again notified of the charge on January 7, 2022, when he received the Conduct Report and Notice of Disciplinary Hearing ("Screening Report"). Dkt. 16-1 and dkt. 16-11. He pled not guilty to the charge. *Id.* On his Screening Report, Mr. Baker declined to have a lay advocate appointed but indicated that he wished to call Amy Unger and all of the inmates on the labor line crew as witnesses. Dkt. 16-11. Mr. Baker also specified that he would send separate requests for physical evidence and witnesses. *Id.* Later that day, Mr. Baker submitted a separate witness and evidence request which included the questions that he wished to ask Ms. Unger and the labor line crew. Dkt. 16-13. Specifically, he stated that he intended to ask Ms. Unger about the incident, what statements she made to Officer Davis, whether she knew the inmates on the labor line crew, and whether she intended to deliver anything to inmates or to a place that the inmates could access. *Id.* at p. 2. He further stated that he intended to ask the inmates on the labor crew about whether they were charged, placed in administrative segregation, or if they were involved in a plan or conspiracy to traffic the gummies. *Id.* Mr. Baker's witness requests were denied because Ms. Unger previously gave a statement, and the labor line crew's identity was unknown because Mr. Baker did not provide any names. *Id.* Mr. Baker also requested his job history and conduct history, the Intelligence and Investigations file, and any other evidence supporting the charge. *Id.* at p. 3. In response, the hearing officer granted Mr. Baker's evidence request pertaining to the job history and conduct history but denied his request to examine the Intelligence and Investigations file because it was confidential, and the Investigation Report was an appropriate substitute because it included an accurate summary of the phone calls. *Id.*

A hearing was held on February 1, 2022. Mr. Baker again pled not guilty. Dkt. 16-14. At the time of the hearing, the hearing officer recorded Mr. Baker's statement as:

> I had no access to the Jasonville Water Dept. or the gummies. The phone calls do not contain any evidence of trafficking. Amy Unger's statement to OII does not

3

>support a trafficking charge. There is no evidence of an agreement to traffick. None of the inmates on the labor line crew were charged with trafficking. There is no factual basis for a trafficking charge.

Dkt. 7-5.

Based on Mr. Baker's statement and job history, the Conduct Report, the Investigation Reports, and the pictures of the gummies and bank statements, dkts. 16-1, 16-2, 16-4, 16-5, 16-6, 16-7, 16-8, 16-9, 16-10, and 16-14, the hearing officer found Mr. Baker guilty. Dkt. 16-14. The sanctions imposed included the deprivation of one hundred eighty days of credit time, a credit class demotion, and six months in restrictive housing. *Id.*

Mr. Baker appealed to the Facility Head. He raised seven related grounds for relief, which can be summarized as follows: 1) insufficient evidence of guilt; 2) prison officials targeted him in violation of his rights to Equal Protection; 3) facts alleged do not violate A-111/113, Indiana Code §§ 35-441-3-5 or 35-44.1-3-6; 4) labor line crew has never been identified; 5) no evidence of the gummies was presented at the hearing; 6) prison officials failed to disclose exculpatory evidence; and 7) witnesses and evidence were denied. Dkt. 16-16 at p. 1.

The appeal was denied. *Id.* at p. 1. The Faculty Head explained:

>Your appeal has been received and reviewed, I find no procedural errors and the sanctions are well within the allowed guidelines. There are phone recordings to corroborate your intentions as well as the admission by Ms. Unger. Just because you didn't work on the labor line, doesn't [] mean you weren't conspiring to traffic.

*Id.*

Mr. Baker then appealed to the Final Reviewing Authority. In denying his final appeal, the Appeal Review Officer stated that "[t]he procedure and due process of this case appear to be true and accurate," and explained: "The charge is clear; the evidence sufficient. The sanctions are within the guidelines of the Disciplinary Code for Adult Offenders. There is no present information indicating modification or dismissal is necessary." Dkt. 16-17.

4

Mr. Baker then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III. Analysis

In his Amended Petition and Memorandum, Mr. Baker claims that his due process rights were denied because there was insufficient evidence of his guilt.[1] First, he asserts that his due process rights were violated because there was insufficient evidence of his guilt. Dkt. 11 at p. 3, dkt. 11-1 at pp. 2-11. Second, he argues that prison officials violated his due process rights by failing to disclose material exculpatory statements. Dkt. 11 at p. 3, dkt.11-1 at pp. 13-14, 16-19. Third, he argues that prison officials violated his due process rights by denying his request for evidence and witnesses to support his claim of innocence. Dkt. 11 at p. 3, dkt.11-1 at pp. 15-17. Each of these arguments are now addressed in turn.

#### A. *Sufficiency of Evidence*

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). Further, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

---

[1] Mr. Baker previously filed a Petition on April 26, 2022. Dkt. 2. With the Court's permission, Mr. Baker later filed an amended petition with an accompanying memorandum on May 27, 2022. Dkts. 8, 10, 11. Mr. Baker's amended petition and memorandum repeat the same grounds and expound upon these grounds.

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). A Conduct Report "alone" may establish the "some evidence" requirement. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Mr. Baker argues that the Conduct Report and Investigation Report are insufficient evidence because they do not specify how he violated the Indiana Department of Correction ("IDOC") A-111/A-113 and thus Officer Davis' conclusion that there was a conspiracy to traffic is based on mere speculation. Dkt. 11-1 at pp. 2-11. He claims that the phone calls are ambiguous, that there is no evidence that the labor crew line was involved, and that the gummies are not a controlled substance. *Id.* IDOC defines trafficking as:

> Giving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee.

Dkt. 16-3 at p. 1. While Conspiracy/Attempting/Aiding or Abetting is defined as: "Attempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense." *Id.*

For the reasons explained below, there is some evidence of a conspiracy to traffic.

### 1. The Evidence

Mr. Baker argues that the Conduct Report and Investigation Report are insufficient evidence because they do not specify how he violated A-111/A-113. Dkt. 11-1 at pp. 2-11. Respondent counters that the Conduct Report and Investigation Report are sufficient evidence of

6

Mr. Baker's guilt. Specifically, the phone calls and Ms. Unger's statements support the conclusion that Mr. Baker directed Ms. Unger to drop the gummies at the Jasonville Water Department. Dkt. 16 at pp. 11-12 (citing Dkts. 16-1, 16-2, and 16-18).

The Court agrees with Respondent. A hearing officer is permitted to rely solely on a Conduct Report. *McPherson*, 188 F.3d at 786. However, in this case, the hearing officer relied on the Investigation Report in addition to the Conduct Report which contained details about the phone calls, Ms. Unger's testimony, and the gummies. Dkt. 16-14. Importantly, the Conduct Report and the Investigation Report indicate that there were telephone discussions between Ms. Unger and Mr. Baker that alluded to Ms. Unger bringing gummies to a location specified by Mr. Baker – the Jasonville Water Department – that Ms. Unger confirmed that Mr. Baker directed her to bring the gummies to the Jasonville Water Department, and that law enforcement retrieved the gummies where Ms. Unger stated that she left them. Dkt. 16-1, dkt. 16-2, and dkt. 16-18.

Mr. Baker cites to three cases to support his argument that the reports here contain insufficient evidence. Dkt. 11-1 at pp. 3-5 (citing *Austin v. Pazera*, 779 F.3d 437, 438-39 (7th Cir 2015); *Harper v. Superintendent*, No. 3:16-CV-584-PPS-JEM, 2017 U.S. Dist. LEXIS 2073, at *7 (N.D. Ind. Jan 6, 2017); and *McNeal v. Night*, No. 1:20-cv-01370-SEB-TAB, 2021 U.S. Dist. LEXIS 3780, at *8 (S.D. Ind. Jan. 8, 2021)). Respondent properly states that these cases are readily distinguishable. Dkt. 16 at pp. 11-13. *Austin* is not applicable to this case because it primarily addresses constructive possession, which is not at issue in case. *See* 779 F.3d at 438-39 (concluding that there was no evidence to conclude that the prisoner constructively possessed the tobacco). Moreover, neither of the district court cases are persuasive because the hearing officers in those cases relied solely on odd phone calls or a Conduct Report with vague conclusions. *McNeal*, No. 1:20-cv-01370-SEB-TAB, 2021 U.S. Dist. LEXIS 3780, at *8 (noting that there is no evidence

other than the contents of the phone calls, which merely suggest that the conversations were odd); *see also Harper*, No. 3:16-CV-584-PPS-JEM, 2017 U.S. Dist. LEXIS 2073, at *7 (suggesting that there is insufficient evidence where the Conduct Report fails to state the offense, what was trafficked, and how the prisoner was involved).

The reports in this case, however, contained sufficient evidence to support a guilty finding. Importantly, these reports contained details of telephone discussions between Ms. Unger and Mr. Baker that assisted law enforcement in locating Ms. Unger shortly after she dropped the THC gummies at the Jasonville Water Department, obtaining Ms. Unger's statement, and retrieving the THC gummies. Dkt. 16-1 (Conduct Report providing a summary of the events leading up to the charges and directing that further information was contained in the Investigation Report); Dkt. 16-2 (Report of investigation noting that after speaking with Mr. Baker about gummies and the Water Department on the phone, Ms. Unger traveled to Jasonville to drop gummies at the Water Department) and Dkt. 16-18 at pp. 1-2 (indicating that Ms. Unger was spotted leaving Jasonville, that during a traffic stop, she admitted that she dropped the THC gummies near Jasonville Water Department at Mr. Baker's direction, that law enforcement retrieved the THC gummies where Ms. Unger said she left them, and that Ms. Unger confirmed that these were the THC gummies that she dropped off per Mr. Baker's request).

In reply, Mr. Baker adds that the hearing officer did not possess sufficient evidence because he did not review the actual video of Ms. Unger's statements and the Intelligence and Investigation file to verify the contents of the Conduct Report and the Investigation Report. Dkt. 19 at p. 12. This argument is not persuasive, because the Court has independently reviewed the video of Ms. Unger's statements and finds that her statements incriminated Mr. Baker. Specifically, Ms. Unger indicated that she had purchased THC gummies on two separate occasions at

8

Mr. Baker's request, including the day that law enforcement questioned her. Dkt. 18. She also stated that Mr. Baker told her to drop the THC gummies at a park in Farmersburg and near the Jasonville Water Department. *Id.* Ms. Unger further indicated that while she was unsure of Mr. Baker's exact purpose, she believed that he wanted her to leave the gummies as a "favor for a friend on the outside." *Id.* Finally, Ms. Unger specified that she was unaware that she was trafficking and that she did not intend to break any laws. *Id.* Therefore, there is sufficient evidence to find Mr. Baker guilty of conspiring to traffick.

### 2. Labor Line Crew

Mr. Baker also argues that there is no evidence of an agreement or plan with the labor line crew. Dkt. 11-1 at pp. 5-6 and dkt. 19 at p. 2 (suggesting that even if there is evidence of an agreement between Ms. Unger and Mr. Baker to drop the gummies, there is no connection to the labor line crew). He suggests that there is no evidence of his intent to retrieve the gummies or that he knew the labor crew line's work schedule. Dkt. 10 at pp. 3-4.

Respondent correctly states that an agreement or plan between the labor line crew and Mr. Baker or Ms. Unger is unnecessary because the agreement between Ms. Unger and Mr. Baker is sufficient to support a guilty finding. Dkt. 16 at pp. 13-14. Conspiracy under IDOC A-111 only requires one additional person. Dkt. 16-3 ("Attempting by *one's self or with another person* or conspiring or aiding and abetting *with another person* to commit any Class A offense.") (emphasis added).

There is sufficient evidence of Mr. Baker's agreement or plan with Ms. Unger to drop gummies and that Ms. Unger believed that Mr. Baker wanted the gummies "as a favor for a friend." Dkt. 18. The fact that the gummies were dropped at the Jasonville Water Department the day before the labor crew was designated to be there is also some evidence that the drop was intended

9

for someone on the labor crew to pick up. Dkt. 16-1, dkt. 16-2, and dkt. 16-18. More specific evidence of Mr. Baker's connection to the labor line crew or evidence showing Mr. Baker had a plan to physically retrieve the THC gummies is not necessary to meet the "some evidence" standard. Simply delivering the gummies to a prison work site is sufficient to violate the IDOC's prohibition against trafficking, A-113. Dkt. 16 at p. 18.

In addition, evidence of Ms. Unger's intent to traffic or knowledge that her actions were illegal is not necessary. Dkt. 16 at pp. 18-30 (noting that there is no intent or knowledge requirement in A-113 Trafficking offense); dkt. 16-3 (defining trafficking); *see also Marmont v. State*, 48 Ind. 21, 31 (1874) (declaring that "every man is presumed to know the laws of the country in which he dwells") and *Dewald v. State*, 898 N.E.2d 488, 493 (Ind. Ct. App. 2008) (stating that "[i]gnorance of the law is no defense."). Per Mr. Baker's direction, Ms. Unger intentionally dropped the gummies between the bushes at the Jasonville Water Department. Ms. Unger's intentional act, dropping the gummies at Mr. Baker's request on a prison work site, is sufficient evidence to support a plan or agreement to traffic under IDOC's guidelines. Thus, Mr. Baker's argument fails.

### 3. Controlled Substance

Mr. Baker further asserts that the gummies are not a "controlled substance" or are otherwise legal under Indiana law and federal law. Dkt. 11-1 at pp. 9-10 (citing to 21 U.S.C. 812 (The Controlled Substances Act) and Ind. Code §§ 35-44.1-3-5; 35-44.1-3-6 (Indiana's trafficking and contraband statutes)). Respondent counters that the legal authority that Mr. Baker relies on is not relevant because Mr. Baker was not found guilty under these statutes but under IDOC's regulations. Dkt. 16 at pp. 14-16. In his Reply, Mr. Baker suggests that the warden cannot determine what two civilians may transfer. Dkt. 19 at pp. 3-4.

Mr. Baker's reasoning is flawed because there is sufficient evidence that the gummies are "an unauthorized physical object" under IDOC's regulations and that Baker directed the transfer of the gummies. Dkt. 16-3, dkt. 16-1, dkt. 16-2, and dkt. 16-18. The involvement of civilians is immaterial. A warden does possess authority over Mr. Baker's actions because as a prisoner in an Indiana prison, Mr. Baker is subject to IDOC's regulations. The key factor is not who transferred the gummies, or even who would or could physically retrieve the gummies, but that Mr. Baker orchestrated the events which prompted Ms. Unger to drop the gummies at the Jasonville Water Department. Thus, Mr. Baker cannot prevail on this argument.

For the reasons listed above, this Court finds that the evidence is sufficient. Accordingly, Mr. Baker is not entitled to relief on this claim.

### B. *Denial of Witnesses*

Mr. Baker also asserts that the prison officials violated his due process rights by denying him the opportunity to call Ms. Unger and the labor line crew as witnesses and failing to disclose these witnesses' alleged exculpatory statements. Dkt. 11-1 at pp. 13-14, 16 (asserting that Ms. Unger stated that she brought the gummies for someone else and that she did not intend to conspire or traffic with Baker and suggesting that the labor line crew was questioned and made exculpatory statements and that this testimony would have swayed the hearing officer's decision); *see also* Dkt. 16-3 at p. 2 (denying Mr. Baker's request to have Ms. Unger and the labor line crew testify because Ms. Unger already gave a statement and Mr. Baker did not provide any names or identities for the labor line crew). In response, Respondent argues that Mr. Baker mischaracterizes Ms. Unger's testimony and that there is no evidence that the labor line crew was questioned. Dkt. 16 at pp. 17-20 (noting that Mr. Baker took Ms. Unger's statements out of context, that he references nonexistent statements, that there is no evidence that the labor line was questioned, and

that even if the crew denied any trafficking involvement, this testimony is not exculpatory). In his Reply, Mr. Baker argues that Ms. Unger would have provided exculpatory testimony, that the hearing officer incorrectly concluded that her testimony was exempt because she previously gave statements under *Miranda*, and that Officer Davis hid the names of the labor line crew so that Mr. Baker could not call them as witnesses.[2] Dkt. 19 at pp. 6-8, 9-10.

The right to call witnesses extends only to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id*., and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). "Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff*, 418 U.S. at 566).

In this case, Mr. Baker was not entitled to call Ms. Unger because she previously made incriminating statements and Mr. Baker's request can be construed as a request to cross examine Ms. Unger. Dkt. 16-13 at p. 2 (stating that he wished to ask Ms. Unger about the incident, what statements she made to Officer Davis, whether she knew the inmates on the labor line crew, and whether she intended to deliver anything to inmates or to a place that the inmates could access). Prisoners do not have a due process right to cross examine or confront witnesses in disciplinary proceedings. *Hull v. Cooke*, No. 1:20-cv-02774-JRS-TAB, 2022 U.S. Dist. LEXIS 195020, at *8 (S.D. Ind. Sept. 27, 2022) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976)). Accordingly,

---

[2] In his Reply, Mr. Baker does not address Respondent's contention that the labor line crew was not questioned. Dkt. 19. There is no evidence that the labor line crew was identified or questioned.

Mr. Baker is not entitled to call Ms. Unger because her testimony was not exculpatory, and he does not have a due process right to cross examine witnesses.

Mr. Baker was also not entitled to call the labor line crew because their testimony is neither material nor exculpatory. Even if the labor crew line were produced to answer Mr. Baker's questions, their testimony would not dispute any agreement or plan to traffick between Mr. Baker and Ms. Unger. Dkt. 16-13 at p. 2 (Mr. Baker specifying that he wished to ask the labor crew whether they were charged with anything, placed in administrative segregation, or involved in any plan to or conspiracy to traffick). Moreover, whether any crew members were charged or administratively punished does not exculpate Mr. Baker. Thus, any error that the prison committed by denying Baker's request or allegedly hiding the identity of the crew is harmless. *See Piggie*, 342 U.S. at 666 (harmless error doctrine applies to prison disciplinary cases). Therefore, Mr. Baker is unable to establish a reasonable probability that this testimony would have changed the hearing officer's decision. Accordingly, Mr. Baker is not entitled to relief on this claim.

### C. *Denial of Evidence*

Finally, Mr. Baker claims that the prison officials violated his due process rights by preventing him from examining the Intelligence and Investigations file. Dkt. 11-1 at p. 16. Respondent counters that any error in denying Mr. Baker's request was harmless because the Investigation Report accurately summarizes the investigation, and the file supports the hearing officer's decision. Dkt. 16 at p. 20. In his Reply, Mr. Baker contends that Respondent's reasons for withholding the file are invalid and that the file could have contained exculpatory, material evidence. Dkt. 19 at p. 12.

Due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie*, 344 F.3d at 678. As with witnesses, documentary

evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver*, 539 F.3d 780–81.

Here, Mr. Baker was not entitled to this file because it did not contain any undisclosed exculpatory evidence. Mr. Baker specified that he believed the file was exculpatory because it contained Ms. Unger's statements, that she brought the gummies as a "favor for a friend on the outside" and that she denied any intent or agreement to traffick with Mr. Baker, as well as, the labor line crew's work schedule and identity, and the gummies or pictures of the gummies. Dkt. 11-1 at p. 15-16 (noting that this file allegedly contained the name of the labor line crew, information that the labor line crew was questioned and denied any trafficking involvement, and the video of Ms. Unger's exculpatory statements) and *Id.* at pp. 16-17 (noting that Mr. Baker did not receive the actual gummies or the pictures of the gummies and that this evidence would have proven that the gummies were not THC gummies).

Mr. Baker cannot establish a reasonable probability that this evidence would have impacted the hearing officer's decision for several reasons. First, as noted above, Ms. Unger's statements were incriminating, not exculpatory. Dkt. 18 (noting that Ms. Unger stated that Mr. Baker directed her to drop off the THC gummies at the Water Department, that law enforcement found the gummies where Ms. Unger said she dropped the gummies, and that she believed Mr. Baker wanted the gummies dropped as favor for a friend on the outside). Second, the labor line crew's testimony is irrelevant. As Respondent properly noted, even if the labor line crew testified that they were not involved in a plan or agreement to traffick with Mr. Baker or Ms. Unger, the hearing officer could still find Mr. Baker guilty because there is sufficient evidence that Mr. Baker and Ms. Unger conspired to traffick. Dkt. 16 at p. 19. Third, as specified above, it is immaterial whether the

gummies were a controlled substance under the federal Controlled Substance Act or Indiana's trafficking and contraband statutes because the gummies are "unauthorized physical objects" under IDOC A-113. Dkt. 16-3. Accordingly, Mr. Baker is not entitled to any relief on this claim.

### D. *Motions Requesting Ruling*

Mr. Baker also filed two motions and an accompanying memorandum requesting a ruling on his petition for a writ of habeas corpus. Dkt. 20, dkt. 21, and dkt. 24. As noted in this Order, this Court has denied Mr. Baker's petition. Accordingly, these motions, dkts [20] and [24], are **denied as moot.**

### IV. Conclusion

For the reasons stated above, Mr. Baker is not entitled to habeas corpus relief under 28 U.S.C. § 2254. Accordingly, Mr. Baker's petition for a writ of habeas corpus is **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 01/11/2023

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES BAKER
966664
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
PLAINFIELD, IN 46168
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov